WILLIAM ROSENGREN, respondent,

*v.*

SIGNE ROSENGREN, appellant.

[Submitted October term, 1933.   Decided February 2d, 1934.]

*Mr. William Newcorn,* for the appellant.

*Mr. John G. Flanigan,* for the respondent.

The opinion of the court was delivered by

LLOYD, J.

In this litigation both parties are actors, the husband on a petition for divorce based on extreme cruelty, and the wife by counter-petition seeking divorce for the same cause.   The wife appeals from a decree in favor of the husband.

The proofs in the case established that the parties were married in 1912 and of the union nine children have been born, eight of whom are still living, the youngest of the age of two and one-half years.   Both husband and wife are high tem-

pered and the married life has been at times far from har-
monious. These conditions, however, have not been contin-
uous, there being evidences in abundance of underlying affec-
tion and devotion on the part of both.

Alleged cruelty on the part of the wife consisted in exces-
sive indulgence in intoxicating liquors, abusive language, and
in striking the husband on the chest a number of times with
the hand or fist when intoxicated. On one occasion he said
he found himself bleeding from a blow from a toy wooden
gun which he attributed to the wife, but which she denies.
There was admission by the husband that he reciprocated in
kind, causing marks and bruises on the wife's body, once
pushing her down against a radiator with resulting injury
and unconsciousness.

Drinking seems to have been common to both from the
early days of their marriage, and the hold of drink grew more
strongly perhaps on the wife than on the husband. It clearly
appeared that the husband participated in and encouraged
the drinking habits of the wife, taking her to cafes and speak-
easies, and bringing liquor into the home for their joint con-
sumption. In his testimony he declared that when violence
occurred she would be intoxicated and "would not know what
she was doing."

In such circumstances it would seem rather the duty of a
husband to shield and guard his wife against the temptation
of her indiscretion, rather than to feed it with his own con-
tribution, and if as a result married life becomes a burden
it is in part of his own creation, and he should not be heard
to complain. Above all, this should be so if the resulting
violence is from a mind that, due to drink, is not conscious
of what it is doing.

The general course of life of these parties does not suggest
real cruelty, either of body or mind; not even great marital
unhappiness. The husband, up to the time of his leaving his
home in 1931, contributed liberally to the support of his fam-
ily, giving his wife $100 a week out of his ample salary of
$10,000. They went together to places locally and on ex-
tended trips. The house and children were all properly cared

for, and cohabitation and the birth of children at frequent intervals were a part of their life. It was only when the husband decided to leave in December, 1931, that all this changed and the weekly allowance was suddenly reduced to the sum of $30 per week for the support of the wife and their seven children (one daughter having married and ceased to be a member of the household).

Extreme cruelty is such conduct as endangers the health or safety of the injured party, either actually inflicted or reasonably apprehended. It is not every act of violence that meets this standard. *Taylor* v. *Taylor, 73 N. J. Eq. 745.* The acts of force exhibited against the chest of the husband by an intoxicated wife unconscious of what she was doing and not of sufficient moment to affect their sexual relations are hardly of a character to suggest extreme violence. *Ibid.*

The case in its facts bears a striking resemblance to that of *Cruikshank* v. *Cruikshank, 115 N. J. Eq. 322,* in which a divorce on similar grounds is denied.

It is apparent that language of the wife and her habits of intoxication and the consequent embarrassment to himself are the real grievance of the husband; it was not the acts of personal violence which caused him to break up his home of twenty years' standing and leave his wife and children with the meagre support already mentioned, and the abuse and intoxication were not of a character to endanger safety or health, and if it were otherwise, the abuse was prompted by his own similar language and the intoxication was in part at least of his own making.

So much of the decree as grants a divorce on the petition of the husband is reversed with direction to enter a decree dismissing his petition.

*For affirmance*—VAN BUSKIRK, HETFIELD, DEAR, WELLS, DILL, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, JJ. 10.